# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONSHEEK BASKERVILLE,** | : | CIVIL ACTION NO. 1:19-CV-420 |
| Plaintiff | : | |
| | : | (Chief Judge Conner) |
| v. | : | |
| | : | |
| **CITY OF HARRISBURG** *et al.*, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Ronsheek Baskerville filed this *pro se* civil rights lawsuit against three police officers and the City of Harrisburg, Pennsylvania (the "City"). In his amended complaint, Baskerville alleges that the officers violated his Fourth and Fourteenth Amendment rights and that the City maintains a policy that likewise runs afoul of the Constitution. Magistrate Judge Martin C. Carlson reviewed Baskerville's amended complaint and recommends dismissing all claims with prejudice. Baskerville objects to Judge Carlson's report and recommendations.

## I.  Factual Background & Procedural History[1]

On January 27, 2018, Penbrook Borough Police Officer Brant Maley attempted to stop Baskerville's vehicle for a sunscreen tint violation. Officer Maley alleged in his police report that, while following Baskerville to effect a stop for the tint violation, he smelled the odor of marijuana emanating from Baskerville's vehicle. According to Baskerville, when he stopped his car and exited the vehicle in

---

[1] The following factual recitation is taken from Baskerville's amended complaint and attached police reports. (See generally Doc. 13 & Ex. A).

response to Officer Maley's traffic stop, Officer Maley interpreted these movements as flight and proceeded to tase and arrest Baskerville. Baskerville asserts that the taser deployment and arrest took place on a parking area behind a residence at 3027 Locust Street, Harrisburg, Pennsylvania, not in the yard of that residence as reported by Officer Maley.

Officer Maley searched Baskerville and found a baggie of marijuana. Officer Maley then performed a warrantless probable-cause search of the vehicle and reportedly discovered additional marijuana, drug paraphernalia, cell phones, and a box of 9mm ammunition. Officer Maley also noted that responding officers recovered a cell phone "in Baskerville's flight path" approximately 20 feet from the vehicle but did not discover any additional contraband. (Doc. 13 ¶ 15). No pictures were taken during the January 27 searches and seizures. Baskerville was subsequently charged with the events underlying his arrest and was detained in Dauphin County Prison.

Several weeks later, on February 16, 2018, Susquehanna Township Police Officer Kevin M. Scott responded to a "good Samaritan" call regarding discovery of a handgun. The caller, who lived at 3025 Locust Street, reported that her brother had discovered a handgun in her backyard and had brought it into her house so that she could contact the police. Officer Scott reported that he took 20 digital photographs of the gun and the area in the yard where the firearm had been found.

The recovered firearm was reported to be a "Smith & Wesson" Victor model .38 caliber handgun.[2]

Baskerville appeared before a magisterial district judge for the drug charges on February 22, 2018. At that hearing, Officer Maley charged Baskerville with two additional firearm offenses related to the .38 caliber handgun found on February 16 at 3025 Locust Street. Officer Maley also testified that, on the night of the January 27 arrest, he searched Baskerville's vehicle and discovered a box of matching .38 caliber ammunition. Baskerville was then bound over to county court on the gun and drug charges and was returned to prison.

Officer Maley's January 28 police report concerning the January 27 incident indicates that it was revised on February 23, 2018, to reflect that the bullets found in Baskerville's vehicle were .38 caliber, rather than 9mm. In a separate police-record entry from February 22, 2018, Officer Maley states that he "made a mistake with the initial report and labeled the bullets as 9mm." (Doc. 13 at 17). That same entry explains that, according to a map provided by Officer Scott, "the [.38 caliber] gun was located approximately 20-25 [feet] from where Baskerville was apprehended." (Id.) The Penbrook Borough police records also reflect that on February 22 and 23, Officer Maley signed out the ammunition at issue from the evidence room and "verified they were .38 caliber bullets." (Id.) Penbrook Borough Police Officer

---

[2] The firearm manufacturer information in the appended police materials appears to be erroneous. Baskerville's subsequent federal indictment identifies the firearm as a "Harrington and Richardson" Victor model .38 caliber revolver. See United States v. Baskerville, No. 1:19-CR-33, Doc. 24 (M.D. Pa. Aug. 22, 2019).

3

Stephen Mowery was the evidence room supervisor, and his entries in the police record confirm that Officer Maley signed out and returned the same piece of evidence on these days.

Baskerville's state gun-possession charges were eventually federalized. He currently faces indictment under 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm and ammunition. See United States v. Baskerville, No. 1:19-CR-33, Doc. 24 (M.D. Pa. Aug. 22, 2019). It appears that the state charges were dropped. Baskerville remains in pretrial custody at this time. See id., Doc. 12.

In March 2019, Baskerville filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. He amended that complaint a month later after Judge Carlson screened the initial complaint and found its claims insufficiently pled. The gravamen of Baskerville's amended Section 1983 claims is that Officer Maley, with the knowing assistance of Officer Scott and Officer Mowery, falsified evidence to accuse Baskerville of possessing the later-discovered .38 caliber handgun. Baskerville alleges that Officer Maley intentionally altered his initial report to reflect ammunition that would match the handgun discovered on February 16 and testified falsely at the preliminary hearing about the type of ammunition recovered from Baskerville's vehicle. He further asserts that Officer Scott and Officer Mowery conspired with Officer Maley and took certain actions to effectuate the false charges. Lastly, Baskerville avers that the City has an unconstitutional policy known as "flight path," by which police officers illegally charge suspects with crimes related to contraband recovered near arrest locations.

Judge Carlson screened Baskerville's *pro se* amended complaint and recommends that all claims be dismissed with prejudice, opining that amendment would be futile. Judge Carlson found that Baskerville's claims against the police officers sound in malicious prosecution. Relying primarily on Heck v. Humphrey, 512 U.S. 477 (1994), he concluded that Baskerville fails to state a claim for relief because there has been no favorable termination of the pending federal felon-in-possession charge. Judge Carlson also determined that Baskerville's pleading does not establish any Fourth Amendment violations. Finally, Judge Carlson recommends dismissing the claim against the City because Baskerville has not alleged any facts identifying a constitutionally infirm policy or custom. Baskerville timely objected to Judge Carlson's recommendations.

## II. Legal Standards

### A. Review of a Magistrate Judge's Report and Recommendation

When a party objects to a magistrate judge's report and recommendation, the district court must review *de novo* the challenged portions of the report. 28 U.S.C. § 636(b)(1)(C); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011); LOCAL RULE OF COURT 72.3. Uncontested portions of the report are reviewed for "clear error on the face of the record." Clouser v. Johnson, 40 F. Supp. 3d 425, 430 (M.D. Pa. 2014) (quoting Cruz v. Chater, 990 F. Supp. 375, 375-78 (M.D. Pa. 1998) (quoting FED. R. CIV. P. 72(b) advisory committee's note to 1983 amendment)).

### B.     Screening Pursuant to 28 U.S.C. § 1915A

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees. See 28 U.S.C. § 1915A(a). One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]" Id. § 1915A(b)(1). This language closely tracks Federal Rule of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6). See Grayson v. Mayview State Hosp., 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); O'Brien v. U.S. Fed. Gov't, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (*per curiam*) (nonprecedential); cf. Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to

a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### III. Discussion

At the outset, we must determine the constitutional right or rights at issue in the instant Section 1983 lawsuit. See Albright v. Oliver, 510 U.S. 266, 271 (1994).

Baskerville's amended complaint alleges that his ongoing pretrial detention constitutes a deprivation of his Fourth Amendment right against unlawful seizure and of his Fourteenth Amendment right to liberty except upon due process. (See Doc. 13 ¶¶ 31, 39; Doc. 18 at 2, 3). Baskerville rejects the label of "malicious prosecution" for his claims, instead contending that they sound in false arrest and unlawful pretrial detention, which primarily implicate the Fourth Amendment. We recognize that Baskerville's amended complaint is not a model of clarity, and that invocation of the Fourteenth Amendment's Due Process Clause in this context is often associated with malicious prosecution claims. Nonetheless, we agree that at least some of Baskerville's claims arise under the Fourth Amendment and must be analyzed accordingly.

### A. Section 1983 Claims Against Police Officers

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. See U.S. CONST. amend. IV; Horton v. California, 496 U.S. 128, 133 (1990). This protection applies to false arrest and false imprisonment by state actors, constitutional torts that "overlap" and are often referred to together as false imprisonment. See Wallace v. Kato, 549 U.S. 384, 388-89 (2007). When an individual is arrested and detained prior to the filing of charges and complains that such governmental actions are unlawful, his or her Section 1983 claim is grounded in the Fourth Amendment. See Manuel v. City of Joliet, 580 U.S. __, 137 S. Ct. 911, 917 (2017).

Prior to the Supreme Court's decision in Manuel, the dividing line between false imprisonment claims (implicating the Fourth Amendment) and malicious prosecution claims (invoking due process) was institution of legal process. See Wallace, 549 U.S. at 389-90. However, the Manuel Court held that Fourth Amendment protections extend beyond the start of legal process and apply to "post-legal-process" pretrial detention when that custody suffers from the same constitutional infirmities as unlawful "pre-legal-process" arrest and detention. Manuel, 137 S. Ct. at 918-20. Such a situation may arise when "legal process itself goes wrong," for instance, when "a judge's probable cause determination is predicated solely on a police officer's false statements." Id. at 918-20 & n.8. A claim under the Fourth Amendment "drops out" once trial has occurred, and any allegations of insufficient evidence for conviction and subsequent incarceration implicate the Due Process Clause of the Fourteenth Amendment. Id. at 920 n.8.

Baskerville does not contend that his arrest for drug possession was improper. In other words, he does not claim an initial "false arrest." Indeed, it is uncontested that his initial arrest and detention were lawful. Baskerville is alleging that his continued pretrial detention based upon the subsequent initiation of firearms charges violates his rights under the Fourth Amendment. That is, Baskerville maintains that state and federal authorities lacked probable cause to bring the firearms charges. Specifically, the amended complaint alleges that defendant officers falsified evidence connecting Baskerville to a handgun he never possessed. Under Manuel, these claims arise under the Fourth Amendment and do

not sound in Fourteenth Amendment malicious prosecution.  See id. at 918-20 & n.8.³

Nevertheless, Baskerville cannot state a civil claim for relief at this time, as he is currently incarcerated pending trial on the related federal felon-in-possession charge.  In Manuel, on remand from the Supreme Court, the Seventh Circuit held that a Fourth Amendment claim for "wrongful custody" following initiation of legal process accrues when the unjustified pretrial detention ends.  See Manuel, 903 F.3d at 669, 670.  We find the Seventh Circuit's analysis to be both logical and persuasive.

The wrong asserted by Baskerville, like the claimant in Manuel, is post-legal-process pretrial detention without probable cause—a wrong that "is ongoing rather than discrete."  Id. at 669.  Resolution of this asserted wrong necessarily requires termination of any pretrial custody duly authorized by legal process.  See id. at 669-70.  Moreover, Baskerville's ongoing pretrial detention is properly authorized by legal process.  Hence, this detention cannot be attacked through Section 1983.  See id. at 670 (citations omitted).  For these reasons, we must dismiss Baskerville's Fourth Amendment claims without prejudice; quite simply, his claims have not yet accrued.

---

³ To the extent that Baskerville's amended complaint asserts a Fourteenth Amendment due process claim that state actors intentionally used fabricated evidence to deprive him of liberty without due process, such a claim must be dismissed.  See McDonough v. Smith, 588 U.S. __, 139 S. Ct. 2149, 2155-59 (2019).  The Supreme Court has expressly likened this type of claim to malicious prosecution, thus requiring—as an element—favorable termination of the related criminal proceedings.  Id. at 2156, 2159.

### B. <u>Monell</u> Liability Claim Against the City

Municipalities and other local governments are "persons" for purposes of Section 1983 liability, see <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 690 (1978), but such entities are not responsible for every constitutional tort inflicted by their employees, <u>Connick v. Thompson</u>, 563 U.S. 51, 60 (2011). Municipalities are only responsible for "their *own* illegal acts." <u>Id.</u> (quoting <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 479 (1986)). To bring a Section 1983 claim against a municipality, the plaintiff must show that "the alleged constitutional transgression implements or executes a policy, regulation[,] or decision officially adopted by the governing body or informally adopted by custom." <u>Mulholland v. Gov't Cty. of Berks</u>, 706 F.3d 227, 237 (3d Cir. 2013) (citation omitted). In other words, a plaintiff can establish Section 1983 municipal liability in two ways: policy or custom. <u>Watson v. Abington Township</u>, 478 F.3d 144, 155 (3d Cir. 2007); <u>Santiago</u>, 629 F.3d at 135. The Third Circuit has explained that, to prove liability, the plaintiff must establish that the municipal policy or custom was itself unconstitutional, or was the "moving force" behind the constitutional deprivation. <u>Thomas v. Cumberland County</u>, 749 F.3d 217, 222 (3d Cir. 2014) (citation omitted).

We agree with Judge Carlson that Baskerville's amended complaint fails to state a claim for <u>Monell</u> liability. Beyond sweeping generalities, Baskerville does not provide any factual allegations delineating the parameters of the City's "flight path" policy. More fundamentally, Baskerville does not explain how such a policy is unconstitutional. The Supreme Court has noted that using abandoned evidence—

11

discarded during flight from police prior to seizure—does not offend the Fourth Amendment. See California v. Hodari D., 499 U.S. 621, 629 (1991). Because Baskerville's amended complaint does not explain how the City's alleged "flight path" policy violates federal law, he has failed to state a viable Section 1983 claim against the City.

## IV. Conclusion

We will sustain in part and overrule in part Baskerville's objections. We will dismiss without prejudice Baskerville's Section 1983 claims under the Fourth and Fourteenth Amendments against the named police officers. We will dismiss with prejudice Baskerville's Monell claim against the City because he has failed to state a claim for relief after multiple attempts. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: January 9, 2020